# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ZERO GRAVITY CORPORATION,  )<br>  )<br>  Plaintiff,  )<br>  )<br>v.  )<br>  )<br>COMMERCIAL JET SERVICES, LLC,  )<br>  )<br>  Defendant.  )<br>  ) | Case No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff ZERO GRAVITY CORPORATION ("Zero-G") brings this action against Defendant COMMERCIAL JET SERVICES, LLC ("Commercial Jet") as follows:

## PARTIES

1. Zero-G is a corporation organized and existing under the laws of the State of Maryland.

2. Commercial Jet is a corporation organized and existing under the laws of the State of Alabama.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL BACKGROUND

5. Zero-G is an aviation company, which operates microgravity flights that simulate zero-gravity.

6. Commercial Jet is an aviation maintenance company, specializing in heavy maintenance checks for aircraft.

7. Zero-G contracted with Commercial Jet to perform a routine "C-check" for Zero-G's Boeing 727-200 aircraft (the "Aircraft"), beginning on July 1, 2025.

8. A C-check is a comprehensive, heavy maintenance procedure performed on an aircraft, typically every eighteen to twenty-four months.

9. On July 1, 2025, Zero-G surrendered its plane to the custody and control of Commercial Jet at a hangar controlled by Commercial Jet in Dothan, Alabama (the "Dothan Hangar").

10. Commercial Jet had exclusive custody of Zero-G's aircraft during the C-check.

11. During maintenance, Commercial Jet personnel caused substantial damage to the Aircraft.

12. Specifically, Commercial Jet personnel improperly reinstalled an APU exhaust duct.

13. During a pressurization check, extremely hot exhaust blew into the wheel well of the Aircraft, causing significant damage.

14. For nearly three weeks, Commercial Jet continued work on the Aircraft without disclosing the damage to Zero-G.

15. Zero-G remained unaware of the damage until its own representatives discovered it nineteen days later.

16. Additional incidents during C-check caused damage to the tail section of the aircraft.

17. Commercial Jet personnel also improperly discharged an engine fire extinguisher.

18. Repeatedly during the C-check, Commercial Jet failed to disclose or attempted to suppress discovery of the damage their personnel caused to the aircraft.

19. During maintenance, Commercial Jet submitted maintenance inspection cards, requesting additional paid labor hours for maintenance under misleading details.

20. Zero-G authorized these additional maintenance inspection hours based on the misleading requests by Commercial Jet.

21. Commercial Jet subsequently attempted to charge Zero-G for repairs, inspection, or paid labor hours related to damage Commercial Jet personnel caused.

22. Once Zero-G discovered the damage, Zero-G issued a "stop work order" to assess the damage and prevent further damage.

23. Commercial Jet permitted Zero-G to secure a third-party inspector to assess the damage.

24. The inspection report confirmed extensive damage to the Aircraft that likely resulted in a total loss or requires replacement of a wing.

25. A third-party engineering firm informed Zero-G representatives that the original manufacture, Boeing, would need to approve any repairs due to the extent of the damage.

26. Zero-G approached Commercial Jet with a request to begin resolving this issue.

27. Commercial Jet has refused to engage in either assessing the damage, recommending fixes for the aircraft, engaging Boeing, or contacting its insurance broker.

28. Further, Commercial Jet benefited from failing to disclose the damage, as Zero-G authorized continued unnecessary maintenance inspections on the Aircraft, which may ultimately be a total loss, for over two weeks.

29. Zero-G entered into an agreement with Everts Air Cargo ("Everts") to facilitate this C-check under Everts' 14 CFR 121 maintenance program.

30. On August 18, 2025, Everts sent a letter to Zero-G revoking access to the certification due to "the developing MRO (maintenance, repair, and overhaul) situation, and current maintenance status of the aircraft."

31. Additionally, Zero-G contracts with the United States Space Force ("Space Force") and the National Aeronautics and Space Administration ("NASA").

32. On May 22, 2025, Zero-G signed a $13 million contract with the Space Force (contract number FA251825C0002) to support twelve (12) parabolic flights in fiscal year (FY) 2025 with options for additional flights for the following three FYs.

33. The Space Force has deferred four (4) flights from FY 2025 to FY 2026 because of the C-check and has provided notice to Zero-G that it will exercise its options for twelve (12) flights in FY 2026.

34. The extended grounding of Zero-G's Aircraft removes the Space Force's sole domestic source for microgravity training and research to support its national security mission.

35. Zero-G also has an indefinite delivery/indefinite quantity (IDIQ) contract with NASA through September 30, 2026.

36. NASA depends on Zero-G's Aircraft for microgravity training of astronauts and critical research that supports future orbital and lunar missions.

37. The extended grounding of Zero-G's Aircraft will negatively affect NASA's ability achieve its mission.

38. These contracts remain critical for research, military applications, and national security.

39. Due to Commercial Jet's continued concealment, delay, and refusal to engage, these critical contracts are at risk.

40. Moreover, due to the extent of the damage, the Aircraft cannot be moved from the Dothan Hangar without disassembly.

41. By failing to engage in resolving this dispute, Commercial Jet essentially holds the Aircraft hostage, preventing Zero-G from being able to acquire an airworthy aircraft in time to perform these critical contracts.

## CLAIMS FOR RELIEF

### COUNT I: NEGLIGENCE

42. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

43. Commercial Jet owed Plaintiff a duty to perform maintenance on the Aircraft in a safe, careful, and workmanlike manner, consistent with applicable industry and FAA standards.

44. Commercial Jet, through its agents and employees, failed to exercise reasonable care while conducting maintenance on the Aircraft, including but not limited to:

    (a) Failing to properly inspect, install, or secure critical components of the Aircraft;

    (b) Using improper procedures and/or inadequate equipment; and,

(c) Failing to identify and/or remedy critical issues prior to continuing further tests and maintenance.

45. As a direct and proximate result of Commercial Jet's negligence, the Aircraft suffered physical damage, rendering it unsafe and unfit for operation.

46. Plaintiff incurred damages including costs of repair, loss of use of the Aircraft, business interruption, diminution of value, and other consequential losses.

47. Plaintiff asserts the doctrine of *res ipsa loquitor*:

(a) The damage to the Aircraft is of kind which ordinarily does not occur in the absence of negligence;

(b) Commercial Jet had full management and control of the Aircraft at the time of the damage; and,

(c) Plaintiff did not contribute to the damage.

### COUNT II: MISREPRESENTATION OF MATERIAL FACTS

48. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

49. With knowledge of their falsity or recklessly without knowledge, Commercial Jet misrepresented material facts to receive authorization for further maintenance inspections and to potentially repair damage Commercial Jet caused.

50. Plaintiff acted on these misrepresentations.

51. As a result, Plaintiff suffered financial damage.

52. Commercial Jet's misrepresentation of facts regarding repair and maintenance of a commercial aircraft constitutes a reckless or conscious disregard of the rights or safety of others.

## COUNT III: SUPPRESSION OF MATERIAL FACTS

53. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

54. Commercial Jet had an obligation to communicate the damage to the Aircraft to Plaintiff.

55. Commercial Jet suppressed the damage to the Aircraft for over two weeks.

56. During this time of suppression, Commercial Jet continued work on the Aircraft causing further damage.

57. As a result of this suppression, Plaintiff was unable to issue a "stop work order" to mitigate further damage to the Aircraft.

58. Following the damage, Commercial Jet continued to request and perform potentially unnecessary repairs to the Aircraft, which is likely a total loss.

59. Commercial Jet's suppression of material facts regarding the damage to the Aircraft constitutes a reckless or conscious disregard of the rights or safety of others.

## COUNT IV: UNJUST ENRICHMENT

60. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

61. Commercial Jet was unjustly enriched at the expense of Plaintiff, who conferred a benefit upon Commercial Jet.

62. It would be inequitable for Commercial Jet to retain this benefit without compensating Plaintiff.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Zero Gravity Corporation, respectfully requests this Court enter judgment against Defendants and in favor of Plaintiff as follows:

1. For compensatory damages of $60 million, or in an amount to be determined at trial;

2. For specific performance, requiring Commercial Jet to immediately engage Boeing to assess and evaluate the Aircraft;

3. For punitive damages;

4. For costs of suit incurred herein;

5. For reasonable attorney's fees; and,

6. For such other and further relief as the Court deems just and proper.

Dated: August 22, 2025.

/s/ Carson T. Perreault
CARSON T. PERREAULT
*Counsel for Plaintiff*

Stuart M. Maples
Carson T. Perreault
Sean Cusson*
**THOMPSON BURTON PLLC**
200 Clinton Ave. W, Suite 1000
Huntsville, Alabama 35801
Tel: (256) 489-9779
Fax: (256) 489-9720
smaples@thomsponburton.com
cperreault@thompsonburton.com
scusson@thompsonburton.com
*\*Pending Pro Hac Vice Admission*