# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ZERO GRAVITY CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:25-cv-00682-RAH-JTA |
| | ) | |
| COMMERCIAL JET SERVICES, LLC | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S EMERGENCY MOTION
## FOR EX PARTE TEMPORARY RESTRAINING ORDER

Plaintiff Zero Gravity Corporation ("Zero-G") respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 65(b), for the entry of an emergency ex parte Temporary Restraining Order ("TRO") prohibiting Defendant Commercial Jet Services, LLC ("Commercial Jet") from relocating, moving, or otherwise disturbing Zero-G's Boeing 727-200 aircraft, Registration Number N794AJ, MSN 21243 (the "Aircraft"), from its current position inside Commercial Jet's maintenance hangar located at 100 Jet Services Way, Dothan, Alabama, 36303 (the "Dothan Hangar"). In support of this Motion, Zero-G states as follows:

## INTRODUCTION

Zero-G brings this emergency motion because, as of yesterday, Commercial Jet is believed to be actively relocating the Aircraft from the Dothan Hangar to an

1

unsecured outdoor location, threatening spoliation of evidence central to this case. On Friday, March 6, 2026, Commercial Jet's President, David M. Sandri, sent an email to Zero-G's Vice President of Operations, Keri Edwards, notifying her that Commercial Jet intended to begin relocating the Aircraft from the Dothan Hangar to an outdoor ramp parking as early as Monday, March 9, 2026. Ms. Edwards, who is currently on furlough, did not see the communication until the morning of Tuesday, March 10, 2026. Zero-G's counsel was not contact or consulted prior to this notice, despite the pending litigation between the parties in this Court.

The Aircraft has been inside Commercial Jet's hangar since July 1, 2025, and suffered extensive damage at the hands of Commercial Jet's personnel during a scheduled C-check maintenance procedure. As alleged in the Amended Complaint [Doc. 14], the damage to the Aircraft is so severe that a third-party inspection report confirmed it likely resulted in a total loss or requires replacement of a wing. Further, a third-party engineering firm informed Zero-G that Boeing would need to approve any repairs due to the extent of the damage. (*See* Doc. 14 at ¶ 25). Critically, due to the extent of the damage, the Aircraft cannot be moved from the Dothan Hangar without disassembly. Moving the Aircraft in its current condition–with parts removed and structural damage unresolved–poses a serious risk of causing further irreparable harm to the Aircraft and destroying critical evidence relevant to this litigation.

## <u>FACTUAL BACKGROUND</u>

Zero-G is an aviation company that operates microgravity flights simulating zero gravity.  Zero-G contracted with Commercial Jet to perform a routine C-check for the Aircraft, beginning on July 1, 2025.  On that date, Zero-G surrendered the Aircraft to the custody and control of Commercial Jet at the Dothan Hangar. (*See* Doc. 14 ¶¶ 11-18).

Upon discovering the damage, Zero-G issued a stop work order on or about July 25, 2025, to assess the damage and prevent further harm.  A third-party inspection confirmed extensive damage that likely resulted in a total loss or requires replacement of the wing.  A third-party engineering firm informed Zero-G that Boeing, the original manufacturer, would need to approve any repairs due to the severity of the damage.

The Aircraft has remained in the Dothan Hangar in a partially disassembled state since the work order was issued.  Parts have been removed from the Aircraft. Commercial Jet itself has acknowledged that the Aircraft has "remained in its current position in the hangar" since maintenance was paused.  March 6, 2026, Email from David Sandri attached hereto as **<u>Exhibit B</u>**. The Aircraft, given its condition, cannot safely be relocated without risk of compounding the structural damage or spoliation of evidence.

On March 6, 2026, Mr. Sandri emailed Ms. Edwards stating that, "[d]ue to operational requirements and scheduled maintenance commitments for other aircraft," Commercial Jet intended to relocate the Aircraft from the hangar to outdoor ramp parking, beginning as early as March 9, 2026. *See* Exhibit B.  Mr. Sandri further requested that Zero-G provide shipping or storage containers for parts removed from the Aircraft so they could be "packaged and removed from the hangar area".  The communication was sent only to Zero-G's VP of Operations, who is currently on furlough, and was not coordinated through counsel of either party despite active litigation.

### **STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 65(b), a court may issue a TRO without notice to the adverse party if: (1) "specific facts in an affidavit or verified compliant clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition"; and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). Counsel Certification is attached hereto as **Exhibit A**.

To obtain a TRO, the movant must demonstrate that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever

damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).

## ARGUMENT

### A.    Zero-G is Substantially Likely to Succeed on the Merits.

Zero-G has alleged substantial claims against Commercial Jet for negligence, misrepresentation, suppression of material facts, and unjust enrichment arising from Commercial Jet's destructive conduct during the C-check. (*See generally*, Doc. 14). Zero-G has alleged, and the factual record supports, that Commercial Jet's personnel caused substantial damage to the Aircraft through improper maintenance procedures, concealed the damage for nearly three weeks, continued to perform unnecessary work on the damaged Aircraft, and then attempted to charge Zero-G for labor hours related to repairs necessitated by Commercial Jet's own negligence. (*See* Doc. 14, ¶¶ 11-21).

Alabama law imposes an independent duty on service providers to exercise reasonable skill, diligence, and care in performing services, a duty that exists outside the four corners of any contract. *See Blackmon v. Powell,* 132 So. 3d 1, 4 (Ala. 2013); (Doc. 14, ¶ 44). Commercial Jet's conduct – improperly reinstalling the APU exhaust duct, failing to disclose the resulting damage, continuing work on a severely damaged aircraft without authorization, and misrepresenting the nature of the work being performed – constitutes a clear breach of that independent duty. *Id*.

Further, Zero-G already has substantial evidence–and will discover more as this case proceeds–to support a finding that Commercial Jet performed negligent work on the aircraft and misrepresented this damage to Zero-G. In fact, the incident report Commercial Jet sent Zero-G regarding Commercial Jet's work on the Aircraft establishes a pattern and history of negligent work performed on the Aircraft. Commercial Jet Incident Report Summary Email attached hereto as **Exhibit C**. The incident report explicitly states Commercial Jet's personnel caused damage to the Aircraft on three occasions in July of 2025, including the APU exhaust duct incident which rendered the Aircraft inoperable, and two of which Commercial Jet explicitly attributed to "negligence." *Id.* Not only does this incident report clearly establish that Commercial Jet has a pattern of performing negligent work on the Aircraft, but it also demonstrates that Commercial Jet caused the damage to the Aircraft at issue in

6

this litigation. Given these facts, there is a substantial likelihood that Zero-G is likely to succeed on its claims against Commercial Jet.

**B.     Zero-G will Suffer Immediate and Irreparable Injury Absent a TRO.**

The threated relocation of the Aircraft from the protected environment of the Dothan Hangar to the outdoor ramp parking will cause immediate and irreparable harm to Zero-G for several reasons.

First, the Aircraft has significant unresolved structural damage and is in a partially disassembled state.  Moving the Aircraft in this condition poses a substantial risk of causing additional physical damage to the airframe and its components.  The Amended complaint alleges that the Aircraft cannot be moved for the Dothan Hangar without disassembly. (Doc. 14, ¶ 40).  Any attempt to relocate the Aircraft without proper engineering oversight could exacerbate the existing damage and render an already precarious situation irreversible. (*Id*. at ¶ 41).

Second, exposing the Aircraft to outdoor elements–including rain, wind, temperature fluctuations, and humidity–while it is in a structurally compromised and in a partially disassembled state could cause corrosion, contamination, and further degradation of the aircraft's components and structure.  Such environmental damage would be cumulative and, in many respects, irreversible.

Third, the Aircraft and its current condition constitute critical physical evidence in this litigation and the related insurance claims.  The positioning of the

Aircraft within the hangar, the state of the removed parts, and the condition of the damaged areas all bear directly on Zero-G's claims of negligence, misrepresentation, and suppression of material facts. Further, Zero-G and the insurance companies involved are working to identify the necessary repairs, costs of repairs, and potential total loss of the aircraft. Relocating the Aircraft and removing parts from the hangar area threatens to disturb and potentially destroy this evidence before it can be fully documented, inspected, and preserved for trial and insurance purposes.

Fourth, Zero-G maintains critical contracts with the United States Space Force and the National Aeronautical Space Administration ("NASA"). (*See* Doc. 14 ¶¶ 31-36). The Aircraft is the Space Force's sole domestic source for microgravity training and research to support its national security mission. Any further damage to the Aircraft, or delays in resolving this issue, caused by an unauthorized and uncoordinated relocation would further jeopardize Zero-G's ability to restore the Aircraft to an airworthy condition and fulfill these vital government contracts. These harms–loss of the Aircraft's structural integrity, destruction of evidence, and jeopardy to irreplaceable government contracts–cannot be adequately remedied by monetary damages alone.

## C.   The Balance of Equities Favors Zero-G.

The balance of hardships decidedly favors Zero-G. Commercial Jet claims it needs to relocate the Aircraft "[d]ue to operational requirements and scheduled

maintenance commitments for other aircraft".  *See* Exhibit B. However, the Aircraft has occupied its current position in the hangar for over eight (8) months, since July 2025, and Commercial Jet has not previously raised any urgency regarding hangar space.  The minimal inconvenience to Commercial Jet of maintaining the status quo for a brief additional period while the Court considers the matter is vastly outweighed by the severe potentially irreparable harm that Zero-G would suffer if the Aircraft is moved.

Moreover, to the extent Commercial Jet incurs costs associated with the Aircraft's continued presence in the hangar, the Workscope and General Terms Agreement ("WGTA") between the parties contemplates parking fees and related charges. Any such costs are quantifiable and compensable, whereas the harm to Zero-G from relocation of the Aircraft is not.  This balance further tilts in Zero-G's favor as Commercial Jet's own internal incident summary acknowledges that Commercial Jet personnel damaged the Aircraft, which resulted in the Aircraft's confinement to the hangar.

**D.     The Public Interest Supports the TRO.**

The public interest favors the issuance of a TRO.  The Aircraft is subject to ongoing litigation and inspection for insurance claims. Further damage to the Aircraft will expose each of these parties to additional liability as the matter is resolved. Further, the Aircraft is integral to Zero-G's fulfilling critical government

contracts with the Space Force and NASA, which supports national security, astronaut training, and scientific research. In the event the Aircraft is not already damaged beyond repair, preserving the Aircraft and its components in its current condition serves the public interest by protecting the government's investment in these programs and ensuring that the sole domestic source for parabolic microgravity flights remains available for restoration.

## PROPOSED SECURITY

Zero-G is prepared to post bond or other security in an amount the Court deems appropriate pursuant to Federal Rule of Civil Procedure 65(c).

## CONCLUSION

WHEREFORE, Plaintiff Zero Gravity Corporation, respectfully requests that this Court enter an emergency ex parte TRO:

(a)     Enjoining and restraining Defendant Commercial Jet Services, LLC, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them from relocating, moving, towing, repositioning, or otherwise disturbing Zero-G's Boeing 727-200 aircraft, Registration N794AJ, MSN 21243, from its current position inside the maintenance hangar at Commercial Jet's facility located at 100 Jet Services Way, Dothan, Alabama 36303;

(b)   Enjoining and restraining Defendant from removing, relocating, discarding, or otherwise disturbing any parts, components, or materials removed from the Aircraft and currently stored in or around the hangar;

(c)   Ordering Defendant to preserve the Aircraft and all associated parts, components, and materials in their current condition and location pending a hearing on a preliminary injunction;

(d)   Setting this matter for hearing on a preliminary injunction at the earliest practicable date; and

(e)   Granting such other and further relief as the Court deems just and proper.

Dated: March 10, 2026

/s/ Carson T. Perreault

Stuart M. Maples
Carson T. Perreault
Sean Cusson*
**THOMPSON BURTON PLLC**
200 Clinton Ave. W, Suite 1000
Huntsville, Alabama 35801
Tel: (256) 489-9779
Fax: (256) 489-9720
smaples@thomsponburton.com
cperreault@thompsonburton.com
scusson@thompsonburton.com
*Admitted Pro Hac Vice*

*Counsel for Plaintiff*

# CERTIFICATE OF SERVICE

I do hereby certify that on March 10, 2026, I served a copy of the forgoing document via the Court's CM/ECF system, which will send notice to the following:

James Leroy Banks, IV
**FORMAN WATKINS & KRUTZ LLP**
210 E. Capitol Street, Suite 2200
Jackson, MS 39225
601-960-7834
jake.banks@formanwatkins.com

*Counsel for Defendant*

*s/ Carson T. Perreault*
Carson T. Perreault

12

# EXHIBIT A

## CERTIFICATION PURSUANT TO RULE 65(b)(1)

Undersigned counsel certifies that, given the extreme urgency of the circumstances, efforts to provide formal notice to Defendant's counsel prior to filing this Motion were impracticable.  Commercial Jet's notice of its intent to relocate the Aircraft was sent on Friday, March 6, 2026, to a Zero-G employee who is currently on furlough and who did not see the email until the morning of Tuesday, March 10, 2026. Commercial Jet indicated that relocation would begin as early as Monday, March 9, 2026, meaning that relocation may already be underway or imminent.  The threat of immediate and irreparable harm – including further damage to a structurally compromised and partially disassembled aircraft – is so urgent that any delay in seeking relief from this Court could result in the very harm Zero-G seeks to prevent.

Undersigned counsel will serve this motion and any resulting Order on Defendant's counsel immediately upon filing.

/s/ Sean Cusson
SEAN CUSSON

# EXHIBIT B



**Fwd: Relocation of Aircraft N794AJ (MSN 21243)**

3 messages

---------- Forwarded message ---------
From: **David M. Sandri** <dsandri@commercialjet.com>
Date: Fri, Mar 6, 2026 at 7:11 PM
Subject: Relocation of Aircraft N794AJ (MSN 21243)
To: Keri Edwards <keriedwards@gozerog.com>
CC: Eric Conroy <EConroy@commercialjet.com>, Joseph Ballard <JBallard@commercialjet.com>

Dear Ms. Edwards,

Commercial Jet Services is providing notice regarding aircraft N794AJ (MSN 21243) currently positioned in our maintenance hangar at our Dothan, Alabama facility.

Maintenance activity on this aircraft has been paused since July 25, 2025, at the request of Zero Gravity Corporation, and the aircraft has remained in its current position in the hangar since that time.

Due to operational requirements and scheduled maintenance commitments for other aircraft, Commercial Jet Services will be relocating the aircraft from the hangar to ramp parking.

Commercial Jet will take the minimum actions necessary to safely secure and reposition the aircraft for movement from the hangar to the ramp.

We also request that Zero Gravity Corporation provide appropriate shipping or storage containers for the parts that were removed from the aircraft so they may be packaged and removed from the hangar area.

Commercial Jet Services plans to begin the work required to relocate the aircraft on Monday, March 9, 2026, and requests that containers for the removed parts be delivered to our facility no later than Thursday, March 12, 2026.

Following relocation, the aircraft will remain parked at the facility.

Sincerely,

**David M. Sandri**
*President* | **CommercialJet** - *Advanced MRO Solutions*
**Mobile:** +1.786.543.6072 (Also on WhatsApp) | **Office:** +1.305.341.5154
dsandri@commercialjet.com | http://www.commercialjet.com/

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. If you are the intended recipient but do not wish to receive communications through this medium, please so advise the sender immediately.

# EXHIBIT C



---------- Forwarded message ---------
From: **Richard Scott** <RScott@commercialjet.com>
Date: Fri, Jul 25, 2025 at 2:53 PM
Subject: FW: N794AJ Incident Reports
To: Brandt Smith <brandt@gozerog.com>, James Tammany <jamest@gozerog.com>, Chris Watson <chriswatson@gozerog.com>, Keri Edwards <keriedwards@gozerog.com>, Eric Jameson <ANCMaint10@evertsair.com>
Cc: Eric Conroy <EConroy@commercialjet.com>, David M. Sandri <dsandri@commercialjet.com>, DHN.QA <DHN.QA@commercialjet.com>

Brandt

See below as requested a summary of incidents on N794AJ

**Richard Scott**
*Project Manager* | **CommercialJet** - *Advanced MRO Solutions*
100 Jet Services Way | Dothan Airport | Dothan, Alabama 36303
**Phone:** 334-873-4450 Ext. 7027 | **Mobile:** 334-477-5128
RScott@commercialjet.com | http://www.commercialjet.com

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. If you are the intended recipient but do not wish to receive communications through this medium, please so advise the sender immediately.Please consider the environment before printing this email.

---

**From:** Joseph Ballard
**Sent:** Friday, July 25, 2025 2:42 PM
**To:** Richard Scott
**Cc:** DHN.QA; Eric Conroy
**Subject:** N794AJ Incident Reports

Richard,

Incidents reported on N794AJ.

| | 7/25/2025 | Incident Reports | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| tail | incidentid | idate | prempl | type | summary | projectmgr | descrip | equipment | nonroutine | actiont |
| N794AJ | DHN202519 | 7/6/2025 | D1093 | Damage | Employee ran APU while a short piece of wood was being utilized to support APU duct the heat transfer from duct to wood created damage to lower panel and wires | Richard Scott | Damage | Panel & wiring | 569489 | Recommended group structural training |
| N794AJ | DHN202521 | 7/18/2025 | 7223 | Damage | Failed to secure panels. A little after lunch star an unexpected wind just came thru hangar and lifled wing to body panel off rack in to floor causing damage to panel. | Richard Scott | NEGLIGENCE | wing to body panel | 569576 | Currently no plan in place to combat an event caused by mother nature securing panels in rack should be considered. |
| N794AJ | DHN202522 | 7/22/2025 | D1093 | Damage | We suspect that during pylon open or engine removal a lift was operated under pylon causing scratch at skin required repair. | Richard Scott | NEGLIGENCE | scratch skin | N569619 | We met with the leader to discuss the lift's operation, address potential safety concerns, and report incidents MTB2018-14 was read and signed regarding unreported damage. |

**Joseph Ballard**
*Director of Quality and Safety* | **Commercial**Jet - *Advanced MRO Solutions*
100 Jet Services Way | Dothan Airport | Dothan, Alabama 36303
**Phone:** (334) 873-4450 Ext 7016 | **Mobile:** (251) 300-9933
JBallard@commercialjet.com | http://www.commercialjet.com

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. If you are the intended recipient but do not wish to receive communications through this medium, please so advise the sender immediately.Please consider the environment before printing this email.

