**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

**ZERO GRAVITY CORPORATION**                                          **PLAINTIFF**

**V.**                                                    **CASE NO.: 1:25-CV-00682-RAH-JTA**

**COMMERCIAL JET SERVICES, LLC**                              **DEFENDANT**


**DEFENDANT, COMMERCIAL JET SERVICES, LLC'S MOTION TO**
**DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**
**WITH INCORPORATED MEMORANUM OF LAW**

Defendant, Commercial Jet Services, LLC (herein "CJS"), by and through undersigned

counsel, and pursuant to Federal Rules of Civil Procedure 12(b)(6), and in compliance with the

Court's Order [Doc. 38], files its Motion to Dismiss Plaintiff's Second Amended Complaint [Doc.

39], and in support, states as follows:

**SUMMARY OF PLAINTIFF'S CLAIM**

Plaintiff, Zero Gravity, commenced this action against CJS seeking recovery for physical

damage to its aircraft, a Boeing 727-200 (the "Aircraft"), that was allegedly caused by CJS, an

aviation maintenance company.[1]  As background, Zero Gravity entered into a written contract with

CJS to perform a comprehensive scheduled maintenance (referred to as a "C-check") on the

Aircraft.[2]  On July 1, 2025, Zero Gravity released the Aircraft to CJS to perform the contracted C-

check maintenance.[3]  During the C-check maintenance, CJS personnel allegedly caused damage

to the Aircraft during a maintenance procedure called a pressurization check.[4]  Zero Gravity

---

[1]    Second Amended Complaint [Doc. 39] at ¶¶ 6, 9, 15, and Prayer for Relief.
[2]    Second Amended Complaint [Doc. 39] at ¶¶ 9, 10.
[3]    Second Amended Complaint [Doc. 39] at ¶¶ 13, 14.
[4]    Second Amended Complaint [Doc. 39] at ¶¶ 15, 16, 19.

1

contends that it was somehow not aware of the alleged damage nor did CJS advise it of same, even though a Zero Gravity Representative was required to be present at all times when the work was being performed on the Aircraft.[5]   In addition, Zero Gravity alleges that during the C-check maintenance CJS caused further damage to the Aircraft, and that CJS attempted to charge Zero Gravity with the labor hours for the work that was required to correct the damage CJS had allegedly caused.[6]

In Plaintiff's Second Amended Complaint, Zero Gravity alleges six (6) causes of action against CJS, to wit: (1) Count I – Negligence; (2) Count II – Gross Negligence; (3) Count III – Negligent Entrustment; (4) Count IV - Misrepresentation of Material Facts; (5) Count V – Suppression of Material Facts; and (6) Count VI – Unjust Enrichment.[7]

**MEMORANDUM OF LAW AND ARGUMENT**

## I.     STANDARD OF REVIEW

In determining the merits of a motion to dismiss, a court must "accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949, (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).   Once a court identifies the pleadings that are not entitled to the

---

[5]     Second Amended Complaint [Doc. 39] at ¶¶ 22, 23; and Section 3.8 of parties' contract.
[6]     Second Amended Complaint [Doc. 39] at ¶¶ 24, 25, 28, 40.
[7]     Plaintiff's Second Amended Complaint is patently deficient in that it is a multi-count pleading where each count improperly adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. *Weiland v. Palm Beach Cnty. Sheriff's Off.,* 792 F. 3d 1313, 1320 (11th Cir. 2015) (Court describing the most common type of an improper shotgun pleading.).

2

assumption of truth, the court must next determine whether the well-pled facts "state a claim to relief that is plausible on its face." *Id.* at 1949–50 (citing *Twombly,* 550 U.S. at 570). To survive a motion to dismiss, a plaintiff may not merely "label his or her claims." At a minimum, the Federal Rules of Civil Procedure require "a short and plain statement of the claim" that "will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)).  A plaintiff alleging fraud must state with particularity the circumstances the constitute fraud, including "the who, what, when, where, and how" of the fraudulent conduct. Fed. R. Civ. P. 9(b); *Garfield v. NDC Health Corp.,* 466 F. 3d 1255, 1262 (11th Cir. 2006).

When a plaintiff files suit in federal court, the plaintiff is required to allege facts that show the court has federal subject matter jurisdiction over the case. *Travaglio v. American Express Co.,* 735 F. 3d 1266, 1268 (11th Cir. 2013).  To invoke federal jurisdiction based on the complete diversity of the parties, the allegations in the complaint must include the citizenship of each party to demonstrate that no plaintiff is a citizen of the same state as any defendant. *Id.*  Complaints lacking such jurisdictional allegations should be dismissed on only jurisdictional grounds should the plaintiff be unable to cure the deficiency. *Id.*

## II.    PLAINTIFF'S TORT CLAIMS ARE PREDICATED ON ALLEGATIONS OF DEFENDANT'S FAILURE TO PERFORM UNDER A CONTRACT, AND THUS BARRED AS A MATTER OF LAW

Plaintiff's proposed Second Amended Complaint simply fails to cure the faults of the original Complaint and First Amended Complaint with respect to the tort claims.  Zero Gravity continues, as it must, to admit that it entered into a written contract with CJS to perform the subject maintenance on the Aircraft that allegedly caused the damages which Plaintiff now seeks to

recover in this lawsuit.[8]  However, Zero Gravity alleges numerous causes of action, none of which are a breach of contract claim, in a veiled attempt to avoid the terms and conditions set forth in the parties' written maintenance contract.   In Zero Gravity's prior filing in opposition to Defendant's prior motions to dismiss, Plaintiff went to great lengths to argue that its tort claims are based on CJS's conduct that arises outside the maintenance contract between CJS and Zero Gravity. However, Zero Gravity's allegations in its pleadings show that CJS's work on the Aircraft and the duty to perform them would not exist but for the contractual relationship between the parties. *Sellew v. Terminix International Co.,* 2020 WL 1083148, *8 (N.D. Ala. March 6, 2020) (Court finding that "[a]bsent a contractual relationship, Terminix would have had no duty whatsoever to treat or service Plaintiff's home," and therefore, Plaintiff's redress is a breach of contract and not a negligence claim).  Thus, Plaintiff's tort claims are nothing more than an alleged negligent failure to perform under the parties' contract or otherwise a breach of contract action.

Zero Gravity commenced this action against CJS seeking recovery for physical damage to its aircraft, a Boeing 727-200 (the "Aircraft"), that was allegedly caused by CJS, an aviation maintenance company.[9]  Zero Gravity admits that it entered into a written contract with CJS to perform a comprehensive scheduled maintenance (referred to as a "C-check") on the Aircraft.[10] During the C-check maintenance, CJS personnel allegedly caused damage to the Aircraft during a maintenance procedure called a pressurization check.[11]  In addition, Zero Gravity alleges that during the C-check maintenance CJS caused further damage to the Aircraft, and that CJS attempted

---

[8]    Second Amended Complaint [Doc. 39] at ¶ 9-10.  Under the doctrine of incorporation by reference, the Court may consider the parties' written maintenance contract as it was referenced in the Complaint, and it is central to Zero Gravity's claim. *See, Hi-Tech Pharmaceuticals, Inc. v. HBS International Corp.,* 910 F. 3d 1186, 1189 (11th Cir. 2018).
[9]    Second Amended Complaint [Doc. 39] at ¶¶ 6, 9, 15, and Prayer for Relief.
[10]    Second Amended Complaint [Doc. 39] at ¶¶ 9, 10.
[11]    Second Amended Complaint [Doc. 39] at ¶¶ 15, 16, 19.

to charge Zero Gravity with the labor hours for the work that was required to correct the damage CJS had allegedly caused.[12]  Zero Gravity admits that it is alleging that CJS "failed to exercise reasonable care while conducting maintenance on the Aircraft." (See, Doc. 34-1 at ¶ 64).

Under Alabama law, it is established that a "mere failure to perform a contractual obligation is not a tort." *Gustin v. Vulcan Termite and Pest Control, Inc.,* 331 So. 3d 601, 605 (Ala. 2020).[13]  Here, Zero Gravity's tort claims are solely predicated on duties and responsibilities related to CJS's obligations and performance under the parties' maintenance contract for the C-check work on the Aircraft.  In other words, Zero Gravity is not alleging any wrongful act or omission that is independent of its contract with CJS.  As such, Zero Gravity's tort claims should be barred. *Brown-Marx Associates, Ltd. v. Emigrant Sav. Bank,* 703 F. 2d 1361, 1371-72 (11th Cir. 1983) (Court stating that a mere breach of a contractual provision is not sufficient to support a charge of fraud; and recognizing that the Alabama Supreme Court has stated that an ordinary breach of contract will not give rise to a tort.) citing *Bentley-Beale v. Wesson Oil & Snowdrift Sales Co.,* 165 So. 830, 832 (Ala. 1932); *see also, Halbert v. Credit Suisse AG,* 402 F. Supp. 3d 1288, 1325-26 (N.D. Ala. 2019) (Court finding that to a fraud claim that stems from the same general facts that would support a breach of contract claim, the fraud claim must be independent from the promises in the contract.).[14]

---

[12]    Second Amended Complaint [Doc. 39] at ¶¶ 24, 25, 28, 40.

[13]    See also,  *Sellew v. Terminix International Co.,* 2020 WL 1083148, *7 ("It is well settled that Alabama Courts: [Do] not recognize a tort-like cause of action for the breach of a duty created by contract because a negligent failure to perform a contract  . . . is but a breach of contract.  A plaintiff can only sue in tort when a defendant breaches a duty of reasonable care – the duty one owes to another in his day-to-day affairs – when such a breach causes personal injury or property damage.") citing *Blake v. Bank of Am., N.A.,* 845 F. Supp. 2d 1206, 1210-11 (M.D. Ala. 2012) (quoting *Vines v. Crescent Transit Co.,* 85 So. 2d 436, 440 (1956).

[14]    To the extent Zero Gravity contends that CJS owed Plaintiff independent, statutory and/or regulatory duties on how to perform its maintenance work, and thus its duty of care was outside of the parties' contract; such arguments have been rejected by the courts. See, *Sellew v. Terminix*

In its filings, Zero Gravity urged this Court to ignore its allegations in its pleadings by suggesting that CJS's conduct while performing the contracted-for scheduled maintenance on the Aircraft was somehow independent and outside the parties' written contract. (e.g., see, Doc. 35 at P. 8., "Plaintiff is not alleging a breach of 'an obligation plainly set out in the contract itself.'") Meanwhile, in the very next sentence, Zero Gravity admitted that it is alleging the CJS "failed to exercise reasonable care while conducting maintenance on the Aircraft," which is the gravamen of the parties' contract. (See, Doc. 35 at P. 8).  Clearly, Zero Gravity is patently attempting to avoid the terms and conditions of the parties' written contract by alleging various causes of action other than a breach of contract.  This is the exact reason why courts have adopted the independent tort or duty doctrine that prohibits a party, like Zero Gravity, from bringing a tort action for alleged wrongful conduct in breach of the parties' contract, like here. The obvious public policy for this legal doctrine is to uphold the integrity of the parties' contractual agreements and to prohibit a party from circumventing the limitations and/or allocation of losses and recoverable damages established in the contract by asserting a tort claim.

In summary, Zero Gravity is not alleging any wrongful act or omission that is independent of its contract with CJS.  As such, Zero Gravity's proposed Second Amended Complaint does not cure the pleading problem that plagued its prior complaints, and thus, the Court should deny Plaintiff's motion as an amendment would be futile.

### III.     PLAINTIFF'S FRAUD CLAIMS ARE NOT SUFFICIENTLY PLED WITH PARTICULARITY IN VIOLATION OF FED. R. CIV. P. 9(b) REQUIRING DISMISSAL

Zero Gravity's state law causes of action pled in Counts IV and V, which are based on

---

*Int'l Co.,* 2020 WL 6586316, *6 (N.D. Ala. April 27, 2020) (Although there were statutory and regulatory duties governing termite companies, the only possible source of those duties between the parties was the contract).

allegations of fraud by CJI allegedly misrepresenting material facts and suppression of material facts, are granted under Alabama Code §§ 6-5-101 and 6-5-102.[15] *Army Aviation Center Federal Credit Union v. Poston,* 460 So. 2d 139, 142 (Ala. 1984); *Pearson's Pharmacy, Inc. v. Express Scripts, Inc.,* 505 F. Supp. 2d 1272, 1275-78 (M.D. Ala. 2007). In addition to being barred by the independent tort or duty doctrine discussed in Section II, above, Zero Gravity's additional allegations in its Second Amended Complaint fall short of the particularity requirement to adequately plead a fraud cause of action.

The Federal Rules of Civil Procedure and pleading standards apply to Zero Gravity's causes of action for fraud which are brought in federal court. *Pop v. LuliFama.com LLC,* 145 F. 4th 1285, 1292 (11th Cir. 2025). Under Fed. R. Civ. P. 9(b), when alleging fraud, the party must state with particularity the circumstances constituting fraud, which courts having referred to this heightened pleading standard as the "particularity requirement." *Id.* at 1293. To satisfy this heightened pleading standard, the Eleventh Circuit requires the plaintiff to allege "the who, what, when[,] where, and how" of the fraudulent conduct. *Id.* at 1296. "Stated differently, the plaintiff must allege '(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [plaintiff]; and (4) what the defendants gained by the alleged fraud.'" *Id.* citing *Am. Dental Ass'n v. Cigna Corp.,* 605 F. 3d 1283, 1291 (11th Cir. 2010) (quoting *Brooks v. Blue Cross & Blue Shield of Fla.., Inc.,* 116 F. 3d 1364, 1380-81 (11th Cir. 1997)); see also, *Omnipol, A.S. v. Multinational Defense Services, LLC,* 32 F. 4th 1298, 1307 (11th Cir. 2022) (Court noting that the

---

[15]    Alabama Code § 6-5-101 states that "[m]ispresentation of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitutes **legal fraud**." (emphasis added). Alabama Code § 6-5-102 states that "[s]uppression of a material fact which the party is under an obligation to communicate constitutes **fraud**." (emphasis added).

purpose of Rule 9(b) is alert defendants to the precise conduct with which they are charged and to protect defendants against spurious charges of immoral and fraudulent behavior.).

Here, to its credit, in its Second Amended Complaint, Zero Gravity sprinkled in a few names of individuals, who allegedly made a statements on a certain dates related to alleged damage to the Aircraft. However, as a whole, those few allegations are insufficient to state with particularity the circumstances constituting fraud to withstand a motion to dismiss, as follows.

In Plaintiff's Second Amended Complaint, Zero Gravity claims that the Aircraft was damaged during the "Wheel Well Incident," which occurred on July 6, 2025, during a pressurization check during which extremely hot exhaust blew into the Aircraft's wheel well.[16] While not explaining how hot exhaust gases escaped the APU exhaust duct, it is logical to connect Plaintiff's allegation that on July 6, 2025, an unidentified CJS employee improperly reinstalled the APU exhaust duct.[17] Zero Gravity then alleges that CJS employee, Joseph Ballard was aware of the Wheel Well Incident, but apparently did not disclose the incident and alleged damage.[18] Then, on the following day, July 7, 2025, a CJS agent or employee named Angel submitted a non-routine work card to Zero Gravity's onsite representative, Chris Watson. This work card requested inspection time to inspect a gap in the seal where the APU exhaust duct connects to the exhaust portal located on the top of the Aircraft's right wing.[19] Although not alleged in the pleadings, presumably, the CJS agent/employee (Angel) was inspecting the integrity of the APU exhaust duct seal with the exhaust portal.

The above is the full extent of Zero Gravity's allegations of the "who, what, when, where,

---

[16]    Second Amended Complaint [Doc. 39] at ¶ 19.
[17]    Second Amended Complaint [Doc. 39] at ¶ 16.
[18]    Second Amended Complaint [Doc. 39] at ¶¶ 20-22.
[19]    Second Amended Complaint [Doc. 39] at ¶ 30.

and how" CJS fraudulently misrepresented or suppressed material facts in this case. Zero Gravity

certainly had an opportunity to include such particulars in its amended pleading but intentionally

chose not to or simply could not.

The purpose of the heightened pleading requirement is to protect a defendant, like CJS,

against spurious charges of fraudulent behavior, and to alert it to the precise conduct with which

it is charged. *Omnipol, A.S. v. Multinational Defense Services, LLC,* 32 F. 4th 1298, 1307 (11th

Cir. 2022). Here, in its Second Amended Complaint, Zero Gravity had a second opportunity to

comply with the heightened pleading standard required by Fed. R. Civ. P. 9(b) in pleading its fraud

claims but failed. Accordingly, Counts IV and V of Zero Gravity's Second Amended fail to state

a claim upon which relief may be granted and must be dismissed

### IV.   PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS BARRED DUE TO AN EXISTANCE OF AN ADEQUATE REMEDY AT LAW

Zero Gravity's claim for an equitable remedy based on an unjust enrichment cause of action

is a quasi-contractual theory or legal fiction used to create an implied contract. *Univalor Trust, SA*

*v. Columbia Petroleum, LLC,* 315 F.R.D. 374, 382 (S.D. Ala. 2016), citing *White v. Microsoft*

*Corp.,* 454 F. Supp. 2d 1118, 1133 n. 24 (S.D. Ala. 2006) and *Shedd v. Wells Fargo Home Mortg.,*

*Inc.,* 2014 WL 6451245, *6 and n.4 (S.D. Ala. Nov. 17, 2014). As an equitable remedy, a claim

for unjust enrichment is only recognized where there is no adequate remedy at law. *Univalor Trust*

at 382. Thus, the existence of an express contract between the parties, which provides an adequate

remedy at law, extinguishes an unjust enrichment claim. *Id.*

As mentioned and admitted by Plaintiff, Zero Gravity and CJS entered into a written

contract for the subject maintenance work (C-check) performed by CJS on the Aircraft.

Accordingly, as Zero Gravity has an adequate remedy at law (e.g., breach of contract theory of

recovery), and there exists a contract between the parties. Accordingly Zero Gravity has failed to

state a claim upon which relief may be granted, with respect to its unjust enrichment claim. As such, that claim, like those that precede it in the Second Amended Complaint, must claims must be dismissed.

## CONCLUSION

In the Second Amended Complaint, Zero Gravity admits that the parties entered into a written contract for maintenance work CJS performed on the Aircraft. This case is a straightforward breach of contract dispute; however, Plaintiff pleaded everything but a breach of contract cause of action because the clear and unambiguous terms of the contract make clear that Plaintiff waived or limited its right to certain damages alleged in the Second Amended Complaint.

CJS is entitled to a dismissal of the Second Amended Compliant on the following grounds: (1) Zero Gravity's negligence claims are not independent of the written contract entered into by the parties; (2) Zero Gravity's fraud claims fail to state with particularity the circumstances constituting fraud as required by Fed. R. Civ. P. 9(b); and (3) Zero Gravity's unjust enrichment claim is not available as there is an adequate remedy at law for Plaintiff's alleged claim that CJS damaged the Aircraft.

For all the foregoing reasons set forth herein, Plaintiff's Second Amended Complaint should be dismissed with prejudice, as leave to amend would be frivolous.

Respectfully submitted, this 2nd day of April 2026.

COMMERCIAL JET SERVICES, LLC, DEFENDANT

BY: */s/James L. Banks IV*
James L. Banks IV (BAN028)

*Attorney for Commercial Jet Services, LLC*

OF COUNSEL:

10

FORMAN WATKINS & KRUTZ LLP
210 E. Capitol Street, Suite 2200
Jackson, Mississippi 39201-2375
Post Office Box 22608
Jackson, Mississippi 39225-2608
O: 601-960-7834
F: 601-960-8613
jake.banks@formanwatkins.com

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on April 2nd, 2026, undersigned counsel electronically filed

the foregoing document with the Clerk of Courts using CM/ECF which will send notification of

such filing to: Thompson Burton PLLC, counsel for Plaintiff, Carson T. Perreault, Esq., Stuart M.

Maples, Esq., Sean Cusson, Esq., 200 Clinton Avenue, W, Suite 1000, Huntsville, AL 35801.

**COMMERCIAL JET SERVICES, LLC, DEFENDANT**

BY:    /s/*James L. Banks IV*
       James L. Banks IV (BAN028)

       *Attorney for Commercial Jet Services, LLC.*