# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| ZERO GRAVITY CORPORATION, **)** | |
| **)** | |
| Plaintiff, **)** | |
| **)** | Case No. 1:25-cv-00682-RAH-JTA |
| vs. **)** | |
| **)** | **JURY TRIAL DEMANDED** |
| COMMERCIAL JET SERVICES, LLC, **)** | |
| **)** | |
| Defendant. **)** | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Plaintiff Zero Gravity Corporation ("Plaintiff" or "Zero-G"), by and through undersigned counsel, submits this Response in compliance with the Court's Show Cause Order (Doc. 43) (the "Order") and in opposition to the Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 42, the "Motion") filed by Defendant Commercial Jet Services, LLC ("Defendant" or "Commercial Jet"). Again, Defendant contends that the Second Amended Complaint should be dismissed because Plaintiff's tort claims are barred, Plaintiff's fraud claims lack sufficient particularity, and Plaintiff's unjust enrichment claims are barred.

The Court should deny the Motion because (1) Plaintiff's tort claims arise from an independent duty to exercise reasonable skill and care, not from contractual promises; (2) Plaintiff's fraud claims are particularly pled and inform Defendant of

1

the specific timeframe, context, and manner in which the fraudulent behavior occurred; and (3) Plaintiff's unjust enrichment claim arises from post-damage concealment that induced payments Plaintiff would not otherwise have authorized.[1]

## **INTRODUCTION**

Defendant's Motion should be denied. This is the fourth time Defendant has moved to dismiss Plaintiff's claims, and for the fourth time, Defendant advances the same arguments that this Court has already had the opportunity to consider. The Second Amended Complaint alleges six causes of action arising from Defendant's catastrophic mishandling of Plaintiff's Boeing 727-200 aircraft (the "Aircraft") during a routine maintenance check–and from Defendant's subsequent campaign to conceal the damage, mislead Plaintiff, and extract payment for unnecessary work.

The facts, taken as true as this Court must at this stage, paint a troubling picture.  On July 6, 2025, during a pressurization check, Defendant's employees improperly reinstalled an APU exhaust duct and used an improper wooden block to support it, leading to a catastrophic wheel well incident that caused extensive heat damage to the Aircraft (the "Wheel Well Incident"). Rather than disclose the damage, Defendant concealed it for nearly three weeks, submitted misleading inspection requests to extract additional paid labor hours, and attempted to cover up

---

[1] Due to the similarity of issues before the Court, Plaintiff incorporates by reference its arguments contained in the previous responses to Defendant's Motions to Dismiss (Doc. 15 and Doc. 21).

the extent of the damage by cleaning and repairing wiring in the wheel well without Plaintiff's knowledge. Although Defendant recorded an incident report on the day of the damage, Plaintiff was not informed until its own representative discovered the damage nineteen days later. The resulting damage is so severe that the Aircraft is likely a total loss, jeopardizing Zero-G's ability to support the United States Space Force and NASA, including. (Second AC ¶¶ 50-51). The Space Force has already cancelled its FY 2025 obligated flights and declined to exercise its FY 2026 option as a direct result of the Aircraft being grounded. (Second AC ¶ 54).

Defendant's Motion rehashes three arguments, each of which fails. First, Defendant contends that Plaintiff's tort claims are merely repackaged breach of contract claims. However, Alabama law has long recognized that a duty of reasonable care is implied in every service obligation and that negligent performance of a contract gives rise to a tort independent of and distinct from a breach of contract. Second, Defendant argues that Plaintiff's fraud claims lack sufficient particularity under Rule 9(b). This is incorrect. In fact, the Second Amended Complaint identifies specific individuals, specific dates, specific conduct, and specific documents with which Defendant committed its fraud, far exceeding the notice required at the pleading stage. Third, Defendant contends that Plaintiff's unjust enrichment claim is barred because an adequate remedy at law exists. But Defendant's concealment induced post-damage payments that Plaintiff would not

3

otherwise have authorized–conduct that sounds in equity, not contract. The Motion should be denied.

## PROCEDURAL HISTORY

Plaintiff filed its initial Complaint on August 22, 2025. (Doc. 1). In response, Defendant filed a Motion to Dismiss. (Doc. 9). On October 15, 2025, Plaintiff responded to this initial Motion to Dismiss with a response in opposition (Doc. 15) and an Amended Complaint (Doc. 14, the "AC"). The Amended Complaint updated Plaintiff's jurisdictional allegations to specify Plaintiff's citizenship in Washington. (AC at ¶ 1). Plaintiff's response in opposition included an affidavit of Kevin Sproge, Plaintiff's Chief Executive Officer ("CEO"). (Doc. 15-1). Sproge's affidavit established Plaintiff's state of citizenship as Washington, as Plaintiff operates fully remotely and the CEO, who directs and controls the business, resides in Washington. (Doc. 15-1). This Amended Complaint rendered Defendant's initial Motion to Dismiss moot. (*See* Doc. 20).

On October 29, 2025, Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint. (Doc. 19). The Court then ordered Plaintiff to show cause as to why this Motion should not be granted. (Doc. 20). While Defendant replied to Plaintiff's response to the initial show cause order, the Court issued another show cause order (Doc. 23) requiring Plaintiff to show cause "as to why this case should not be dismissed for lack of subject matter jurisdiction" with "sworn testimony and

4

evidence directed to the actual location of its corporate activities, the duties and responsibilities of its executive officers, including those located in Florida, and the general factors discussed in *Hertz*." (Doc. 23, p. 3). Plaintiff submitted a response to the show cause order, supported by sworn affidavits demonstrating Plaintiff's nerve center is in Washington.

Defendant submitted another Motion to Dismiss Plaintiff's Amended Complaint (Doc. 26). The Court then issued an Order requiring Plaintiff to file a response to the Motion on or before March 13, 2026. (Doc. 27). Plaintiff then moved to file a Second Amended Complaint (Doc. 34), which was granted by this Court (Doc. 38). Plaintiff filed its Second Amended Complaint (Doc. 39, the "Second AC"), providing additional facts learned in the course of litigation since the filing of the initial Complaint. Defendant then filed this Motion, arguing the Second Amended Complaint should be dismissed on the same grounds as Defendant's previous motions to dismiss. The Court issued the Order, requiring Plaintiff to show cause as to why the Motion should not be granted.

## LEGAL STANDARD

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "the court takes the facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff." *Stroud v. Mitchell*, 2025 U.S. Dist. LEXIS 140833 1, 4 (M.D. Ala. July 23, 2025). To overcome this motion, "the

complaint must 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim is one that provides sufficient factual content to "'allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

To overcome a motion to dismiss, the complaint must contain "either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Randall v. Scott*, 610 F.3d 701, 707 n. 2 (11th Cir. 2010) (internal citation and quotation omitted). If a complaint states enough facts to "'raise a reasonable expectation that discovery will reveal evidence'" of the required element, then the motion to dismiss must be denied. *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309-10 (11th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548, (2007)).

## LAW AND ARGUMENT

I. **PLAINTIFF'S TORT CLAIMS ARE NOT BARRED BECAUSE DEFENDANT'S DUTY TO REASONABLY PERFORM EXISTED OUTSIDE OF THE CONTRACT.**

This case is not about broken promises. Plaintiff does not allege that Commercial Jet failed to undertake the C-check or breached a specific contractual term. Rather, Plaintiff alleges that Commercial Jet "failed to exercise reasonable care while conducting maintenance on the Aircraft" (Second AC ¶ 64) by failing to properly inspect, install, or secure critical components of the Aircraft; using

improper procedures and inadequate equipment; and failing to identify and remedy critical issues prior to continuing further tests and maintenance. These allegations describe a breach of the free-standing duty of reasonable care that Alabama law implies in every service relationship–not the breach of a contractual promise.

### A. Nonobservance of Duties Performed in Connection with a Contract Can Sound in Tort.

Of course, breaches of an ordinary contract will not always support a tort cause of action, "in the legal sense of that term–a wrong independent of contract." *Bentley-Beale, Inc. v. Wesson Oil & Snowdrift Sales Co.*, 231 Ala. 562, 564-65 (Ala. 1936) (internal quotation omitted). However, a tort cause of action frequently arises "in the non-observance of duties, which are but the implication of contract-obligation." *Id.* at 565. "[T]he duty of requisite skill, fidelity, diligence, and a proper regard for the rights of others, is implied in every obligation to serve another," and failure to abide by these duties supports a tort cause of action. *Id.* It is well-settled in Alabama law that "'a duty of due care can accompany a contractual obligation.'" *Blackmon v. Powell*, 132 So. 3d 1, 4 (Ala. 2013) (quoting *Armstrong Bus. Servs. v. AmSouth Bank*, 817 So. 2d 665, 679 (Ala. 2001)). *See also Brown-Marx Assocs., Ltd. v. Emigrant Sav. Bank*, 703 F.2d 1361, 1371 (11th Cir. 1983) ("[i]t is possible for a tort to arise in Alabama out of a breach of a duty implied by or arising out of a

contract.")[2]; *Sherrill v. Ala. Appliance Co.*, 197 So. 1, 4 (Ala. 1940) ("[A] duty to use reasonable skill and diligence…is implied in every obligation made by contract" and breach of it may sound in tort.).

In cases where a tort claim arises from failure to abide by a contract, the court will consider "if the cause of action arises from a breach of duty growing out of the contract." *Vines v. Crescent Transit Co.*, 85 So. 2d 436, 440 (1956) (internal citation omitted).   If the duty arises out of the contract, "'the contract is laid as mere inducement, and the tort arising from the breach of duty [is] the gravamen of the action.'"   *Id* at 439 (quoting *Mobile Life Ins. Co. v. Randall*, 74 Ala. 170, 177 (1883)).  Essentially, allegations that a contract has been breached does not prevent a party from bringing a tortious cause of action if "the non-performance is by reason of a failure to exercise the care required by law in attempting to perform."  *Harris v. Bd. of Water & Sewer Comm'rs*, 320 So. 2d 624, 628 (Ala. 1975). Where a defendant does undertake performance of a contractual obligation, "his performance may be negligent, giving rise to a tort." *Id.* (citing *Sloss Sheffield Steel & Iron Co. v. Wilkes*, 231 Ala. 511 (1936)).

### B.    *Sellew* Does Not Shield a Party Who Negligently Performs.

---

[2] Defendant cites *Brown-Marx* for the proposition that "mere breach of a contractual provision" is insufficient to support tort claims to support its contention that Plaintiff's claims should be barred. However, while *Brown-Marx* acknowledges the legal reality that a tort may arise from duties arising from a contract, it is distinguished on the facts: "The gravamen of Brown-Marx's claim is the bank's failure to close on the appointed day, *an obligation plainly set out in the contract itself.*" 703 F.2d at 1371 (emphasis added).

Defendant confuses the occasion with its duty to act with reasonable care. Relying on *Sellew*, Defendant urges the Court that the tort claims must be dismissed because Defendant's duty to perform the work "would not exist but for the contractual relationship between the parties." (Doc. 42 at 4). In other words, Defendant seems to contend, contrary to Alabama law,[3] the presence of a contract precludes tort claims in connection with performance of the contract. As noted by Defendant, *Sellew*, in turn relies on language in *Vines v. Crescent Transit Co.*, 264 Ala. 114, 119 (1955), that "[a] plaintiff can only sue in tort when a defendant breaches a duty of reasonable care–the duty one owes to another in his day-to-day affairs–when such a breach causes personal injury or property damage." *Sellew* is not dispositive on the present fact.

First, the absence of duties "but for" a contract is not the test for whether a claim lies in tort under Alabama law. Alabama recognizes tort claims even where a duty arises out of affirmative actions. For instance, in mutually beneficial bailments, a bailee has an obligation to "exercise reasonable care to preserve the property from loss or injury." *White Swan Laundry v. Blue*, 223 Ala. 663, 665 (Ala. 1931). Importantly, bailments many only arise if the bailee voluntarily assume[s] custody and possession of the property, and [] intend[s] to exercise control over it. *Garrett v. Nelson & Affiliates, Inc.,* 794 F. Supp. 2d 1253, 1261 (M.D. Ala. 2011) (citing

---

[3] *See supra* at pp. 7-8, *§ I.A; see also infra* at pp. 11-14, § I.C.

9

*Farmer v. Mach. Craft, Inc.*, 406 So.2d 981, 982 (Ala.Civ.App.1981)).  Ergo, the duty would not have existed but for the voluntary assumption.  Despite this, "where the bailee fails to exercise such care, and the property is damaged, the bailor may maintain an action of assumpsit for breach of the contract, or an action on the case for breach of the duty."  *White Swan*, 223 Ala. at 665.

Similarly, Alabama recognizes the voluntary undertaking doctrine: "the doctrine that one who volunteers to act, though under no duty to do so, is thereafter charged with the duty of acting with due care and is liable for negligence in connection therewith."  *Dailey v. City of Birmingham*, 378 So. 2d 728, 729 (Ala. 1979).  As the Supreme Court of Alabama noted, "[i]t is well settled under Alabama law that one who undertakes to perform a duty he is not otherwise required to perform is thereafter charged with the duty of acting with due care."  *King v. Nat'l Spa & Pool Inst., Inc.,* 570 So. 2d 612, 614 (Ala. 1990).  Tort liability can arise even when a duty only exists pursuant to an assumption by a party.

The fact that Defendant would almost certainly not have conducted maintenance on the Aircraft absent the contract does not save Defendant from the tort claims.  Consider the improper replacement of a tire which leads to an injury-causing collision.  If a good Samaritan changed the tire, without permission or knowledge of the owner, the Samaritan would likely still be liable for property damage and personal injury under a theory of negligence.  Despite the absence of a

10

contract or an obligation to perform, the Samaritan clearly owes a duty of reasonable care once he undertakes the repair. An auto shop would not escape that duty simply because it changed the tire pursuant to a contract with the owner. Neither can Defendant.

Sellew can also be distinguished from this case on the facts. First, the duties in Sellew arose exclusively from the contract between the parties. Id. at *3-4. The contract in Sellew can be construed as a promise to (1) inspect the home for termites, and (2) eliminate any existing termites with treatment. The Defendant's breach therefore constituted a failure to perform one of those two promises. As the Sellew court noted, the defendant would have no duty to treat the home, absent the contract, so the claims lie in contract. Here, Plaintiff's allegations rely not on a failure to perform a promise, but a failure to exercise reasonable care while performing the contracted services. The instant case is akin to common law negligence: "want of reasonable care in safeguarding the property of plaintiff under the conditions there existing." Alabama Power Co. v. Matthews, 226 Ala. 614, 615, 147 So. 889, 890 (1933). As such, the Court should not find Sellew to be dispositive on the Motion.

### C. Plaintiff Properly Pleads Tort Claims Because It Alleges Misfeasance by Defendant.

Defendant's repeated insistence that Plaintiff's tort claims sound in contract ignores a long-recognized distinction under Alabama law between nonfeasance and misfeasance. See Morgan v. S. Cent. Bell Tel. Co., 466 So. 2d 107, 114 (Ala. 1985).

11

Plaintiff properly pleads claims in tort, as its allegations concern the manner in which Defendant conducted maintenance. *See id.* (Despite no tort-liability for nonfeasance for failing to do what was promised, "misfeasance, or negligent affirmative conduct in the performance of a promise generally subjects and actor to tort liability as well as contract liability for physical harm to persons and tangible things."). Alabama recognizes an independent duty of care that exists apart from any contractual obligations. *See Waters v. Am. Cas. Co.*, 73 So. 2d 524, 529 (Ala. 1953), *Reed v. Stempien*, 475 So. 2d 841, 842 (Ala. 1985), and *Hamner v. Mut. of Omaha Ins. Co.*, 270 So. 2d 87, 90 (Ala. 1972).

It is well-established under Alabama law that misfeasance in the performance of a contractual duty or implied duty arising from a contract sounds in tort. *See Vines*, 264 Ala. at 119 ("[A] negligent *failure* to perform a contract express or implied ... is but a breach of the contract. But if in performing it, it is alleged that defendant negligently caused personal injury or property damage to plaintiff, the remedy is in tort…"). In fact, this is not even the first time an aviation maintenance company has attempted to hide behind a service contract to defeat tort claims under Alabama law arising from damage it caused to a customer's aircraft during maintenance, and it will not be the first time such an attempt has failed. *See Perkins Commc'n, LLC v. D'Shannon Prods., Ltd.*, No. 7:15-cv-01172-LSC, 2016 U.S. Dist. LEXIS 196905 (N.D. Ala. Oct. 13, 2016).

In *Perkins*, the plaintiffs contracted with an aviation maintenance company to perform modifications and upgrades to a small aircraft, including an engine overhaul. *Id*. at *2.  After experiencing engine failure, an inspection revealed that the defendant had used inappropriate parts and improperly installed others. *Id*. at *3. Plaintiffs brought claims for negligence and wantonness, *inter alia*, alleging that Defendant breached a duty to "perform modifications and upgrades on the plane in accordance with industry, manufacturer, and FAA standards" and "failed to perform the upgrades in a workmanlike manner," averring in support that "screws…were not installed to proper tightness" and "key components of the engine were shoddily installed." *Id*. at *9, *12.

The defendant moved to dismiss the plaintiffs' negligence and wantonness claims, arguing that any duty allegedly breached derived solely from the parties' contract. *Id.* at *4. The court rejected that argument and denied the motion to dismiss, drawing the critical distinction between nonfeasance (a mere failure to perform) and misfeasance (tortious conduct in the course of performance). *Id.* at *10. The court found that the gravamen of the negligence and wantonness claims sounded in tort because the allegations emphasized "the manner in which the contract was performed." *Id.* at *12. The court recognized, under Alabama law, even if a duty is solely contractual, "'the negligent performance of a contractual duty' may give rise

13

to an action 'either in contract or in tort.'" *Id.* at \*11 (citing *Ex parte Certain Underwriters at Lloyd's of London*, 815 So. 2d 558, 563 (Ala. 2001)).

Here, as in *Perkins*, Plaintiff does not allege that Defendant simply failed to show up or refused to perform. Rather, Plaintiff alleges that Defendant negligently caused physical damage to the Aircraft during the course of performance of the contracted maintenance, constituting classic misfeasance. Just as the *Perkins* plaintiffs alleged the aviation company "had a duty to perform modifications and upgrades on the plane in accordance with industry, manufacturer, and FAA standards" and failed to perform the upgrades in a workmanlike manner, *Perkins*, 2016 U.S. Dist. LEXIS 196905 at \*9, Plaintiff alleges that Defendant owed a "duty to perform maintenance on the Aircraft in a safe, careful, and workmanlike manner, consistent with applicable industry and FAA standards and the Boeing 727 Aircraft Maintenance Manual" and "failed to exercise reasonable care while conducting maintenance on the Aircraft." (Second AC ¶¶ 63-64). Just as the *Perkins* court found that allegations of shoddy repair work and improperly installed components, sounded in tort because the "gravamen" of the claims went to how the work was performed, this Court should find that Plaintiff's allegations that Defendant's personnel "improperly reinstalled an APU exhaust duct" and "improperly supported the Aircraft with a wooden block" similarly sound in tort. (Second AC ¶¶ 16-17).

Plaintiff's claims are the definition of misfeasance, and as the *Perkins* court recognized, they sound in tort.

**D.    Defendant Owed Plaintiff Additional Duties of Care as Codified by the Federal Aviation Administration.**

Above and beyond the ordinary duty of reasonable care, Defendant also owed Plaintiff independent duties of care imposed by federal aviation safety regulations 14 C.F.R. Part 43 and 14 C.F.R. Part 145. These regulations establish a federal standard of care that governs maintenance and airworthiness, allowing negligence claims to proceed even when a contract exists.

Federal aviation safety regulations impose duties of care on repair stations independent of any contractual obligation.  Under 14 C.F.R. 43.13, individuals or entities performing maintenance on aircraft "shall use the methods, techniques, and practices prescribed" by the manufacturer or those acceptable to the FAA.  The maintenance provider must ensure the aircraft's condition is at least equal to its original or properly altered state with regard to safety and airworthiness.  *See id.* These obligations are imposed as a matter of public safety and not contingent upon any contractual agreement between parties.

Similarly, repair stations "must establish and maintain a quality control system acceptable to the FAA that ensures the airworthiness of the articles on which" maintenance is performed and its personnel must follow this system when performing maintenance.  14. C.F.R. 145.211(a)-(b).  Repair stations must comply

15

with FAA standards, including the qualification and surveillance of noncertificated persons performing maintenance.  14. C.F.R. 145.211(c).  These duties protect the public and ensure compliance with federal safety standards, independent of contractual terms.  *See id.*

Courts have recognized that federal aviation regulations create duties that are independent of contractual relationships, allowing negligence claims to proceed even when a contract exists.  *See In re Air Crash near Clarence Center*, 798 F. Supp. 2d 481, 486 (W.D.N.Y. 2011) (federal aviation regulations have "created an overarching general standard of care" and provide the applicable standards for negligence claims.) (internal quotation omitted). Specifically, Maintenance providers owe a duty of care to perform services with the degree of care expected of a reasonably prudent professional in the aviation industry independent of any contractual obligation.  *See Gaudreault v. Elite Line Servs., LLC*, 22 F. Supp. 3d 966, 974 (D. Minn. 2014) ("[B]y undertaking to provide certain inspection and maintenance services for [the aircraft], [Defendant] owed a duty to perform those services with the degree of care that a reasonably prudent professional inspection and maintenance provider in the aviation industry would use."). The contract may inform the scope of the undertaking but does not determine whether a duty of care exists.  *See id*.

16

In fact, "[v]iolation of a federal statute or safety regulation is generally deemed negligence per se." *Sky Jet, M.G., Inc. v. Elliott Aviation, Inc.*, No. 15 C 8113, 2017 U.S. Dist. LEXIS 25909, at *38 (N.D. Ill. Feb. 24, 2017) (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 318-319 (2005)). Specifically, failure to comply with Federal Aviation Regulations ("FAR") constitutes negligence per se. *See Wojciechowicz v. United States*, 582 F.3d 57, 67 (1st Cir. 2009) ("The violation of FAA regulations, which have the force and effect of law, is negligence per se."). [4]

Here, Defendant's duties under the FAR exist beyond any contractual obligations. [5] Defendant is an FAA-certified repair station operating under 14 C.F.R. Part 145 and is subject to mandatory maintenance standards of 14 C.F.R. Part 43. (Second AC ¶¶ 7-8). These federal safety regulations impose obligations by force of law, not private agreement. As a result, the FAA's Airworthiness Directives and maintenance regulations are mandatory and binding on Defendant. FAA regulations, not the contract, dictate the standard of care. As a result, Defendant's FAR violations

---

[4] *See also France v. Trans States Airlines, LLC*, Civil Action No. 19-cv-01795-REB-NRN, 2019 U.S. Dist. LEXIS 200305, at *17-18 (D. Colo. Nov. 19, 2019); *Gatenby v. Altoona Aviation Corp.*, 407 F.2d 443, 446 (3d Cir. 1968); *Bibler v. Young*, 492 F.2d 1351 (6th Cir. 1974); *SN1017, Ltd. v. Logos Aviation, Inc.*, No. 23-CV-60201-REID, 2024 U.S. Dist. LEXIS 187685, at *18 (S.D. Fla. Aug. 12, 2024); and *Rudelson v. U.S.*, 431 F. Supp. 1101, 1107 (C.D. Cal. 1977) (all applying negligence per se to a violation of federal aviation regulations).
[5] These heightened duties even preempt standards of care under state law. *See Abdullah v. American Airlines, Inc.*, 181 F.3d 363, 371 (3d Cir. 1999).

stand as an independent violation of the requisite duty of care.[6]  Accordingly, Plaintiff has stated a claim for negligent performance for violating the independent duty of care and violating the FAR.

In sum, Plaintiff is not alleging breach of "an obligation plainly set out in the contract itself." *Brown-Marx*, 703 F.2d at 1371.  Plaintiff did not cite to specific contractual language when pleading its negligence claim. Instead, Plaintiff is alleging that Defendant "failed to exercise reasonable care while conducting maintenance on the Aircraft." (Second AC ¶ 64).  These allegations are based upon this long-recognized free-standing duty of performance implied in every contract, including the one between Plaintiff and Defendant.  *See Bentley-Beale, Inc.* 231 Ala. at 565.  Once Defendant "undertake[s] to perform, his performance [was] negligent, giving rise to a tort." *Harris v. Bd. of Water & Sewer Comm'r*s, 320 So. 2d 624, 628 (Ala. 1975).  Plaintiff then alleges that Defendant violated industry, manufacturer, and FAA standards.  (Second AC ¶ 69). Taking these claims as true, Plaintiff has clearly stated a claim for negligent performance arising separate from the Defendant's duties under the contract.

**II.   THE SECOND AMENDED COMPLAINT ADDS NEW CLAIMS OF GROSS NEGLIGENCE AND NEGLIGENT ENTRUSTMENT THAT FURTHER DEMONSTRATE INDEPENDENT TORTIOUS CONDUCT.**

---

[6] Alabama has recognized similar independent duties in other contexts.  *See Lemmond v. Sewell*, 473 So. 2d 1047 (Ala. 1985).

The Second Amended Complaint adds two new tort claims that further distinguish Plaintiff's case from a mere breach of contract action: gross negligence (Count II) and negligent entrustment (Count III).  Count II alleges that the actions of Commercial Jet's agents or employees surrounding the Wheel Well Incident–including the failure to properly reinstall the APU exhaust duct and the use of a wooden block to support the area–"constitute an extreme departure or deviation from applicable industry, manufacturer, and FAA standards" and that Commercial Jet "displayed an extreme disregard for the rights or safety of others." (Second AC ¶¶ 71-72).  These allegations of extreme departure from industry standards describe tortious conduct that no contract could authorize or excuse.

Count III alleges that Commercial Jet negligently entrusted the Aircraft and maintenance equipment to employees or agents who were incompetent to safely perform repairs on the Aircraft, and that Commercial Jet "knew or should have known that these employees or agents were incompetent."  (Second AC ¶¶ 76-77).  Negligent entrustment is a recognized independent tort under Alabama law, and its elements do not depend on any contractual obligation.  *See Poplin v. Bestway Express*, 286 F. Supp. 2d 1316, 1320 (M.D. Ala. 2003) ("[T]he tort of negligent entrustment 'does not arise out of the relationship between the parties but rather is an independent tort resting upon the negligence of the entrustor in entrusting the vehicle to an incompetent driver.'") (quoting *Bruck v. Jim Walter Corp.*, 470 So. 2d

19

1141, 1143 (Ala. 1985)). A claim for negligent entrustment arises from the entrustment of a dangerous instrumentality to a person known to be incompetent–a duty imposed by law, not by contract. *See Vasser v. Tezi Express, LLC*, No. 4:19-cv-1823-CLM, 2021 U.S. Dist. LEXIS 248669, at \*15 (N.D. Ala. Jan. 3, 2021).

These new claims underscore that the tortious conduct alleged in the Second Amended Complaint is not merely a repackaged breach of contract claim. Although Defendant does not specifically address these Counts in the Motion, and thus fails to carry its burden, any attempt by Defendant to dismiss these claims must be denied.

### III.  PLAINTIFF'S FRAUD CLAIMS SATISFY THE PARTICULARITY REQUIREMENTS OF RULE 9(B).

Rule 9(b) demands particulars, not perfection, and Plaintiff's Second Amended Complaint more than clears that bar, giving Commercial Jet fair notice of the conduct, timeframe, and context of Commercial Jet's alleged fraud with sufficient detail to provide fair notice, consistent with the Eleventh Circuit's mandate to harmonize particularity with notice pleading. Under Federal Rule of Civil Procedure 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." This rule requires "'a plaintiff [to] plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant[']s[] allegedly fraudulent acts, when they occurred, and who engaged in them.'" *Waldrep v. State Farm Fire & Cas. Co.*, No. 3:25-cv-171-RAH -SMD, 2025 LX 48221, at \*7 (M.D. Ala. May 19, 2025) (quoting *U.S. ex rel Clausen v. Lab.*

20

*Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002).  This "requires that a complaint plead facts giving rise to an inference of fraud."  *Id.*  The Committee Comments to this rule also state that the "special requirement as to fraud and mistake does not require every element in such actions to be stated with particularity.  It simply commands the pleader to use more than generalized or conclusory statements to set out the fraud complained of."  *Almon v. Byrd*, 336 So. 2d 183, 186 (Ala. 1976).  A complaint will meet this particularity requirement "if the pleading gives fair notice to the opposing party."  *Id.*  Allegations of fraud meeting this particularity requirement do not have to include every minute detail of which a plaintiff may not even be aware.  *See id.*  ("What more could plaintiff have stated as to the circumstances constituting the alleged fraud without being charged with pleading evidence?").

When considering fraud claims in the context of a Motion to Dismiss, the court "'should always be careful to harmonize the directives of Rule 9(b) with the broader policy of notice pleading.'"  *N. Data Ny, LLC v. Rogers*, No. 2:24-cv-771-ACA, 2025 LX 83685, at *12 (N.D. Ala. Apr. 29, 2025) (quoting *Gose v. Native Am. Servs. Corp.*, 109 F.4th 1297, 1318 (11th Cir. 2024)).  Essentially, "a court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial pre-

discovery evidence of those facts." *Gose v. Native Am. Servs. Corp.*, 109 F.4th 1297, 1318 (11th Cir. 2024) (internal citation omitted). *See also Mechler v. John Hancock Life Ins. Co.*, No. 07-0724-CB-M, at *8 (S.D. Ala. Sep. 30, 2008) ("Plaintiffs' fraud/fraudulent suppression claim could be better pled; however, the complaint, taken as a whole, sufficiently alerts the defendant to the misconduct with which it is charged.").

In Count IV, Plaintiff alleges Misrepresentation of Material Facts. The Second Amended Complaint provides detailed factual support, identifying specific individuals, specific dates, and specific conduct. On July 6, 2025, the Wheel Well Incident occurred during a pressurization check, during which extremely hot exhaust blew into the Aircraft's wheel well. (Second AC ¶ 19). Commercial Jet employee Joseph Ballard was aware of the incident and generated an incident report that same day. (Second AC ¶¶ 20-21, 26). Despite this knowledge, "[f]or nearly three weeks, Commercial Jet continued work on the Aircraft without disclosing the damage to Zero-G" and "Commercial Jet failed to disclose or attempted to suppress discovery of the damage" to the Aircraft. (Second AC ¶¶ 20, 27). On July 7, 2025, a Commercial Jet agent or employee named Angel submitted a non-routine work card to Zero-G's onsite representative, Chris Watson, requesting inspection time under misleading details. (Second AC ¶ 30). Without any notice to Zero-G, Richard Scott,

22

another Commercial Jet employee, filed several warranty work cards to clean and inspect the wheel well. (Second AC ¶ 32).

The summary prepared by Ballard failed to accurately describe the Wheel Well Incident and the damage to the Aircraft. (Second AC ¶ 34). Due to this omission, Zero-G did not discover the damage to the Aircraft until July 25, 2025. (Second AC ¶ 35). Even after this discovery, Commercial Jet representatives again misrepresented the cause of the damage, leading Zero-G to authorize additional maintenance work. (Second AC ¶ 36-39). While Zero-G did not discover the true cause of the damage until later, it immediately issued a stop work order when it learned of the true cause of the damage. (Second AC ¶¶ 40-42).

The Second Amended Complaint also states that Plaintiff "acted on these misrepresentation" from Commercial Jet and "suffered financial damage" as a result. (Second AC ¶¶ 81-82).  As to the particulars of the fraud, Plaintiff alleges the misrepresentation was in the form of maintenance inspection card: "During maintenance, Commercial Jet submitted maintenance inspection cards, requesting additional paid labor hours for maintenance under misleading details."  (Second AC ¶ 28).

Contrary to Defendant's characterization, these allegations do far more than "sprinkle[] in a few names." (Motion at 8).  The Second Amended Complaint identifies Joseph Ballard as a Commercial Jet employee who was aware of the

23

damage and generated an incident report on July 6, 2025; identifies Angel as the Commercial Jet agent who submitted the misleading work card on July 7, 2025; identifies Chris Watson as the Zero-G representative who received the work card; and specifies the manner of fraud through misleading maintenance inspection cards. These allegations "sufficiently alert[] [Commercial Jet] to the misconduct with which it is charged." *Mechler*, No. 07-0724-CB-M, at *8. Additionally, these factual allegations, taken as true, provide sufficient information to alert Defendant to the specific "fraudulent acts, when they occurred, and who engaged in them." *Waldrep*, No. 3:25-cv-171-RAH -SMD, 2025 LX 48221, at *7. Commercial Jet is in a better position than Zero-G to know who was present at the time of the repairs and who would have made these representations, particularly on the maintenance inspection cards, meaning Commercial Jet is fully aware of the "particular circumstances for which [it] will have to prepare a defense at trial." *Gose*, 109 F.4th at 1318.

Overall, the allegations in Count II identify the *who* (the specific Commercial Jet personnel performing the C-check), the *what* (misrepresentations through misleading maintenance inspection cards to obtain authorization for continued paid work), the *when* (during the approximately three-week period following the damage, prior to Zero-G's discovery on July 25, 2025), the *where* (at the Dothan Hangar during the C-check), and the *how* (by submitting misleading inspection cards and

24

failing to disclose the damage while seeking authorizations for additional paid labor). Therefore, Plaintiff has provided sufficient information to support a claim of Misrepresentation of Material Facts under both the heightened 9(b) and the notice-pleading standards, and Defendant's Motion to Dismiss should be denied.

In Count V, Plaintiff alleges Suppression of Material Facts.  To state a claim for suppression of material facts under Alabama law, Plaintiff must establish, "(1) that [Defendants] had a duty to disclose [the] material existing fact; (2) that [Defendants] suppressed this material fact; (3) that [Defendants'] suppression of this fact induced [them] to act or to refrain from acting; and (4) that [they] suffered actual damage as a proximate result." *Pearson's Pharmacy, Inc v. Express Scripts*, Inc., 505 F. Supp. 2d 1272, 1277-78 (M.D. Ala. 2007) (internal quotation omitted).

This is precisely what Plaintiff alleges. To support this claim, Plaintiff stated that "Commercial Jet had an obligation to communicate the damage to the Aircraft to the Plaintiff," but "suppressed the damage…for over two weeks." (Second AC ¶¶ 85-86).  Because Plaintiff was unaware of this damage, Plaintiff did not issue a stop work order "to mitigate further damage to the Aircraft." (Second AC ¶ 88).  As a result of this suppression, "Commercial Jet continued to request and perform potentially unnecessary repairs to the Aircraft, which is likely a total loss." (Second AC ¶ 90).  By alleging these facts, Plaintiff has fulfilled all the requirements of fraudulent suppression and has sufficiently notified Defendant of the claims against

which it must defend. *Mechler*, No. 07-0724-CB-M, at \*8; *see also J.G. Rogers Corp. v. Metallized Carbon Corp.*, No. 2:18-cv-01955-RDP, at \*15 (N.D. Ala. Apr. 15, 2019).

Much like Count IV, the allegations in Count V are sufficient to alert Defendant to the "particular circumstances for which [it] will have to prepare a defense at trial." *Gose*, 109 F.4th at 1318. They identify the fact suppressed (the damage to the Aircraft), the party who suppressed it (Commercial Jet), the period of suppression (over two weeks), the effect of the suppression (Plaintiff's inability to issue a stop work order, resulting in further damage and payment for unnecessary repairs), and the resulting harm (a total loss of the Aircraft). Clearly, these allegations "sufficiently alert[] [Commercial Jet] to the misconduct with which it is charged," *Mechler*, No. 07-0724-CB-M, at \*8, and provide sufficient information for Commercial Jet to identify the "particular circumstances for which [it] will have to prepare a defense at trial." Gose, 109 F.4th at 1318. Again, Defendant is in a better position than Plaintiff to know who was present at the time of the repairs and who would have had knowledge of the damage. Taking all factual allegations in favor of Plaintiff, Plaintiff has clearly sufficiently pled the fraud allegations. *See Stroud*, 2025 U.S. Dist. LEXIS 140833 at 4.

Plaintiff agrees with Defendant's assertion that Rule 9(b)'s heightened pleading standard exists to protect a defendant "against spurious charges of

fraudulent behavior, and to alert it to the precise conduct with which it is charged." (Motion at 8, citing *Omnipol A.S. v. Multinational Defense Services, LLC*, 32 F. 4th 1298, 1307 (11th Cir. 2022)). However, Plaintiff here has sufficiently alerted Defendant to the conduct with which it is charged. Plaintiff is not required to begin pleading evidence in the case to meet the particularity requirement of 9(b). *See Almon*, 336 So. 2d at 186. As a result, the requirements for both 9(b) and notice pleading have been met, and the Court should deny Defendant's Motion to Dismiss this claim.

## IV. PLAINTIFF'S UNJUST ENRICHMENT CLAIM SURVIVES 12(B)(6) BECAUSE DEFENDANT'S CONCEALMENT INDUCED POST-DAMAGE WORK ORDER AUTHORIZATIONS.

By any fair measure, Plaintiff's unjust enrichment claim easily clears Rule 12(b)(6). "The Alabama Supreme Court concluded that the retention of a benefit is unjust if (1) the donor of the benefit . . . acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit . . . engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship." *Krishmar-Junker v. Kingline Equip., Inc.*, No. 23-00431-KD-B, 2025 LX 77476, at *42 (S.D. Ala. May 8, 2025) (internal quotations omitted). Defendant contends that unjust enrichment is unavailable because an express contract exists between the parties. However, Plaintiff's unjust enrichment claim does not seek to recover for breach of the maintenance contract; rather, it seeks restitution of

27

payments fraudulently induced through Defendant's post-damage concealment-conduct that falls entirely outside the scope of parties' contractual agreement.

Here, Defendant damaged the Aircraft in early July, concealed that material fact, and then leveraged the concealment to secure additional authorizations for paid labor hours that Plaintiff would not have made had the truth been disclosed. (Second AC ¶¶ 21, 27). Those allegations plead both prongs: Plaintiff's misreliance in authorizing and paying for post-damage work, and Defendant's wrongful nondisclosure to obtain that benefit. At the pleading stage, this is more than sufficient to state a plausible claim that the monies received for work authorized after the undisclosed damage were inequitably obtained and should be restored in equity.

## CONCLUSION

Based upon the foregoing, Defendant's Motion should be denied in its entirety. First, Plaintiff's tort claims sound in negligent performance, not a breach of contract. This is an independent duty that has long been recognized under Alabama law. Second, Plaintiff's fraud claims satisfy the Rule 9(b) standard because Plaintiff has provided fair notice of the fraudulent behavior. Lastly, the unjust enrichment claim is plausibly alleged.

WHEREFORE, Plaintiff Zero Gravity Corporation, respectfully requests this Court deny Defendant's Motion.

Dated: April 24, 2026.

/s/ Stuart M. Maples
STUART M. MAPLES

Stuart M. Maples
Carson T. Perreault
Sean Cusson*
**THOMPSON BURTON PLLC**
200 Clinton Ave. W, Suite 1000
Huntsville, Alabama 35801
T: (256) 489-9779/F: (256) 489-9720
smaples@thompsonburton.com
cperreault@thompsonburton.com
scusson@thompsonburton.com
*Admitted Pro Hac Vice*

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I do hereby certify that on April 24, 2026, I served a copy of the forgoing document via the Court's CM/ECF system, which will send notice to the following:

James Leroy Banks, IV
**FORMAN WATKINS & KRUTZ LLP**
210 E. Capitol Street, Suite 2200
Jackson, MS 39225
601-960-7834
jake.banks@formanwatkins.com

*Counsel for Defendant*

/s/ Stuart M. Maples
STUART M. MAPLES

29